**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                                  No. CR 97-0638 RB

ANDREW POMPEY

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Mr. Pompey's Motion for Compassionate Release, filed on May 1, 2020. (Doc. 641.) Having reviewed the motion, the record, and the applicable law, the Court finds the motion is well-taken and should be **granted**.

**I.      Background**

Mr. Pompey was indicted and went to trial on five counts: Count I, conspiracy to possess with intent to distribute 50 grams or more of a substance containing cocaine base within 1,000 feet of a school in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 860(a); Counts III and VI, distribution of more than 50 grams of a substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); Count V, distribution of more than 5 grams of a substance containing cocaine base within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 860(a); and Count XVIII, possession with intent to distribute more than 500 grams of a substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2. (*See* Docs. 421; 1; Presentence Report (PSR) at 1.[1]) The Court originally sentenced Mr. Pompey to 1,440 months. (Doc. 454.), On August 22, 2019, the Court

---

[1] All citations to the PSR are to the copy provided to the Court by the U.S. Probation Department. The United States attached a copy of the PSR to a previous brief. (*See* Doc. 635-3.)

found him eligible for retroactive application of a sentencing reduction based on Amendments 782 and 788 and imposed a sentence of 180 months each for Counts I, III, VI, and XVIII, and 360 months for Count V, all sentences to run concurrently (Docs. 639–40). Mr. Pompey has served approximately 272 of 360 months, and his anticipated release date is October 11, 2023. (*See* Docs. 641 at 1–2; 643 at 7.)

Mr. Pompey now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to reduce his sentence to time served due to the COVID-19 pandemic. (Doc. 641.)

**II.     Discussion**

   **A.     The Government concedes that Mr. Pompey presents an "extraordinary and compelling reason" for compassionate release.**

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after he has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Mr. Pompey filed a request for compassionate release with the Warden at FCI Texarkana on April 24, 2020. (*See* Doc. 643 at 7.) The Government concedes that 30 days has lapsed since his request, thus the Court finds that he has exhausted his administrative remedies for purposes of this Opinion. (*See id.* at 7 & 8 n.3.)

Mr. Pompey seeks compassionate release pursuant to § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." The Application Notes of the U.S. Sentencing Guidelines § 1B1.13

provide that "extraordinary and compelling reasons exist" where the defendant has certain medical conditions, where the defendant is at least 65 years old and meets other qualifying circumstances, where the defendant has qualifying family circumstances, or for "other reasons." *See* U.S. Sentencing Guidelines Manual § 1B1.13 app. §§ (1)(A)–(D). Mr. Pompey brings his motion under § (1)(D), other reasons. (Doc. 641 at 7.)

Mr. Pompey asserts that "extraordinary and compelling" circumstances exist due to the unprecedented COVID-19 pandemic. (*Id.* at 9–13.) He argues that as an individual with hypertension and type 2 diabetes, "he is among those with the highest risk of death or serious illness from COVID-19." (*See id.* at 13.) The United States concedes that Mr. Pompey has demonstrated an extraordinary and compelling circumstance. (Doc. 643 at 12.) "The government does not contest that an inmate who presents one of the CDC risk factors, as confirmed by medical records, and who is not expected to recover from that condition, presents an 'extraordinary and compelling reason' allowing consideration for compassionate release" in the face of the pandemic. (*Id.* at 9.) Thus, the United States acknowledges, Mr. Pompey's diabetes is a "chronic medical condition[,]" and his "ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself." (*Id.* at 12.)

Despite its concession that Mr. Pompey has established extraordinary and compelling circumstances, the Government insists that compassionate release is not warranted because Mr. Pompey has not shown that he is receiving inadequate medical care or that the BOP's preventative measures are insufficient. (*Id.* at 12–13.) The Court is unpersuaded by these arguments.

It is undisputed that Mr. Pompey's health conditions put him at a greater risk of severe illness if he contracts COVID-19. The CDC lists type 2 diabetes as a condition that puts people of

any age at an "increased risk for severe illness from COVID-19[,]" and hypertension as a condition that might put individuals at a greater risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 7, 2020). The CDC states that individuals with these conditions are at a greater risk; not only individuals with uncontrolled conditions. *See also United States v. Hernandez*, No. CR 13-00511(1) JMS, 2020 WL 3453839, at *6 (D. Haw. June 24, 2020) (finding that even though an inmate's asthma and hypertension were "well-controlled by medication and treatment, he is among those identified by the CDC to have an elevated risk for complications from COVID-19"); *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *16 (N.D.N.Y. Apr. 23, 2020), *reconsideration denied* (June 22, 2020) (noting that one scientific study showed that "hypertensive individuals, medicated or not, face at least a two-fold risk of death from COVID-19 compared to non-hypertensive individuals (although, according to this study, the risk is higher for those who are not taking some form of medication)") (citing Gao, et al., *Association of hypertension and antihypertensive treatment with COVID-19 mortality: a retrospective observational study*, EUROPEAN HEART JOURNAL, June 5, 2020).

The Government describes the BOP's preventative measures to protect inmates from COVID-19 and asserts that there are currently "no cases of COVID-19 at FCI Texarkana, where Defendant is housed." (Doc. 643 at 3–4 & 7 (citing COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 7, 2020)).) However, whether the BOP is taking preventative measures or "whether an individual BOP facility has reported a positive test is not dispositive, for several reasons." *United States v. Rountree*, No. 1:12-CR-0308 (LEK), 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020). First, despite these measures, COVID-19

cases continue to rise in prisons. *See*, *e.g.*, Timothy Williams et al., *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. Times, June 16, 2020, https://www.nytimes.com/2020/06/16/us/coronavirus-inmates-prisons-jails.html (last visited July 6, 2020). Additionally, the Government itself has recognized the continued risk COVID-19 poses to inmates by expanding the circumstances under which inmates can qualify for home confinement due to the pandemic. (*See*, *e.g.*, Doc. 643-4 (May 8, 2020 BOP Memorandum).)

Second, "BOP's self-reported numbers 'must be treated with great caution, as the BOP has so far only tested for COVID-19 those prisoners who seem to be sufficiently unhealthy as to be in need of possible hospitalization.'" *Rountree*, 2020 WL 2610923, at *7 (quoting *United States v. Haney*, 19-cr-541 (JSR), ––– F. Supp. 3d at ––––, 2020 WL 1821988, at *6 (S.D.N.Y. Apr. 13, 2020); citing *United States v. Esparza*, No. 07-CR-294, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) ("[T]esting inside prisons has been scant except for people who self-report symptoms—which means that statistics about the number of infections already in BOP facilities are largely meaningless.")). Further, the Court questions whether the BOP's self-reported numbers are current on its website. For example, the BOP website reports that the Otero County Prison Facility in Chaparral, New Mexico has zero inmate or staff positives and one inmate recovered. *See* https://www.bop.gov/coronavirus/. Yet, the Albuquerque Journal recently reported that the Otero County Prison reported that "more than two dozen staff members" and "275 – or 58% – of federal inmates" at the facility have tested positive for COVID-19. Matthew Reisen, *Otero County Prison reveals testing levels*, Albuquerque Journal, June 25, 2020, https://www.abqjournal.com/1470012/otero-county-prison-reveals-testing-levels.html (last visited July 7, 2020).

Third, "even if BOP were testing for [and reporting cases of] COVID-19 consistently enough that its statistics could be relied upon, prison still poses a significant threat to individuals

5

with health conditions like [Mr. Pompey's] because they serve as incubators that accelerate the spread of the disease." *Rountree*, 2020 W 2610923, at *7 (citing *United States v. Skelos*, 15-CR-317 (KRV), 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prison are powder kegs for infection . . . [because] the COVID-19 virus spreads with uncommon and frightening speed in carceral settings."); *United States v. Sanchez*, No. 18-CR-140, 2020 WL 1933815, at *1 (D. Conn. Apr. 22, 2020) ("[C]orrectional and detention facilities present unique challenges for control of COVID-19 among incarcerated/detained persons, staff, and visitors . . . [because] recommended social distancing and hygiene precautions are more difficult to practice.")). Consequently, the Court is reluctant to wait for a publicized outbreak at Texarkana before recognizing the danger posed to Mr. Pompey given his underlying medical conditions. In sum, the Court agrees that Mr. Pompey has shown extraordinary and compelling circumstances.

### B. Other considerations weigh in favor of a sentence reduction.

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). As the § 3142 factors overlap to an extent with those in § 3553, the Court will consider them together.

The Government argues that Mr. Pompey "would pose a danger to public safety if released" because of the nature of his crime: "selling crack cocaine within 1,000 feet of a school." (Doc. 643 at 12.) The Government contends that Mr. Pompey's original sentencing range—"life imprisonment, . . . is highly reflective of the seriousness of the offense." (*Id.*) On the contrary, the most significant portion of his original sentence, for crack cocaine offenses, was reduced as the result of congressional recognition of sentencing schemes that "reflect[ed] unjustified race-based

7

differences." *See Dorsey v. United States*, 567 U.S. 260, 268 (2012) (citations omitted). While the Court agrees that drug crimes are serious and harmful to our communities, Mr. Pompey's drug conviction alone does not automatically make him a threat to public safety. Rather, courts must evaluate these cases holistically. Thus, in addition to the crime itself, the Court must consider that Mr. Pompey has completed training programs in Responsible Thinking, Personal Growing, Employment, and Health/Nutrition, and he is working toward obtaining his GED, despite facing a 1,440-month sentence prior to the Court reducing his sentence in 2019. (*See* Docs. 638 at 3; 639.)

Mr. Pompey was assigned a criminal history category of III due to seven previous convictions, all of which are non-violent barring one for battery. (*See* PSR ¶¶ 79–85, 87.) These prior convictions occurred when he was much younger, however, and he has served over 22 years in prison for his most recent offenses. He "is currently confined at FCI Texarkana, a low security federal correctional institution" (Doc. 645 at 3), and "has not had any recent or serious disciplinary issues while in custody." (Doc. 642 at 17; *see also* Docs. 643 at 13; 643-6.) The Government stresses that Mr. Pompey has incurred nine disciplinary violations while in prison, five of which were for possession or use of drugs or alcohol. (*See* Docs. 643 at 13; 643-6.) It acknowledges, though, that these violations "are too old to disqualify [him] from consideration for home confinement under the May 8, 2020 BOP home confinement guidance . . . ." (Doc. 643 at 13.) If they are too old to disqualify him under the BOP guidelines, they hold less weight in the Court's analysis on his motion for compassionate release.

The Government asserts without supporting authority that "this Court lacks statutory authority to direct BOP to transfer [Mr. Pompey] to home confinement as an alternative remedy." (*Id.* at 9.) While the Court agrees that it does not have authority under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, § 12003, to order BOP to release

Mr. Pompey to home confinement, it does have "authority to modify sentences in appropriate circumstances, pursuant to 18 U.S.C. § 3582(c)(1)(A)." *United States v. Al-Jumail*, No. 12-20272, ––– F. Supp. 3d at ––––, 2020 WL 2395224, at *7 (E.D. Mich. May 12, 2020) (citations omitted).

The Government also argues that Mr. Pompey "does not have an approved release plan and" has "an ICE detainer in place that will take him directly to [Immigration and Customs Enforcement (ICE)] custody" for deportation upon release. (Docs. 643 at 13; 643-5.) Mr. Pompey agrees that he "will go directly into immigration proceedings" and "does not intend to contest deportation." (Doc. 645 at 3.) Additionally, he plans to stay with his mother in St. Vincent and has "the full support of his family, including his mother, sister, and daughter." (Doc. 641 at 17.) The Government offers no persuasive reason that the Court may not grant compassionate release and order immediate release from BOP custody to ICE pursuant to the detainer. *See*, *e.g.*, *United States v. Ardila*, No. 3:03-CR-264 (SRU), 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (granting compassionate release to inmate due to pandemic and ordering immediate release to ICE custody "pursuant to [the inmate's] underlying detainer"); *United States v. Molina Acevedo*, No. 18 CR. 365 (LGS), 2020 WL 3182770, at *3 (S.D.N.Y. June 15, 2020) (finding that inmate was "not eligible for home confinement because he is subject to a[n ICE] detainer" but would have otherwise been a candidate and granting compassionate release due to pandemic and ordering immediate release to ICE custody for deportation).

Mr. Pompey has served over 75% of his 360-month sentence. The Court finds that the sentence he has served thus far is adequate under § 3553(a), particularly in the face of this novel pandemic, "a risk that the Court did not anticipate and to which it certainly did not intend to expose Mr. [Pompey] when it sentenced him . . . ." *See United States v. Lopez*, No. 18-CR-2846 MV, 2020

WL 2489746, at *4 (D.N.M. May 14, 2020). Accordingly, the Court will grant Mr. Pompey's motion and reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Court strongly encourages Mr. Pompey to seek out drug and alcohol counseling through a 12-step or similar program upon his release.

**THEREFORE,**

**IT IS ORDERED** that the Emergency Motion for Compassionate Release (Doc. 641) is **GRANTED** and Mr. Pompey's sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Mr. Pompey shall be released into the custody of ICE for removal to St. Vincent.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE